# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JERMAN ALDAVA, JR., ) <br> ) <br> Defendant. ) <br> ) | Case No. 13-40076-JAR-01 |

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter comes before the Court on Defendant Jerman Aldava's Motion to Suppress All Wiretap Communications (Doc. 19 ). Defendant challenges all communications to which he was a party, to wit: telephone conversations that were intercepted pursuant to a wiretap order issued on March 29, 2013, and a 30-day extension order issued on April 25, 2013. Defendant contends that neither wiretap order established that the Government had tried normal investigative procedures before applying for the wiretaps, and that those procedures had failed, had reasonably appeared to be unlikely to succeed if tried, or that they would have been too dangerous. Because the Court finds that the affidavits in support of these two wiretap orders sufficiently described the investigative procedures used, and sufficiently justified the ongoing need for the wiretaps at issue, the motion to suppress is denied.

I.  **BACKGROUND**

Defendant is charged with conspiracy to distribute methamphetamine and nine counts of using a telephone to facilitate such activity. The investigation that culminated in indictments of multiple defendants in this conspiracy began in May of 2012, when the Government began utilizing a confidential informant to gather information about a methamphetamine operation in the Topeka, Kansas area. Over the next four months, based on information gathered from this informant and from other sources, the Court granted the Government's motions to intercept wire communications on four separate cellular telephone numbers that were used by alleged co-conspirators Arturo Favela-Gomez and Ismael Nunez.

In October 2012, agents first surveilled Miguel Adame Regino, but only after more investigation, including interceptions from these four wiretaps, did agents identify Miguel Adame-Regino as a possible participant in the conspiracy. Through the use of investigative methods including use of an undercover officer, who purchased methamphetamine from Adame-Regino on several occasions, agents obtained a cell phone number for Adame-Regino.

On March 29, 2013, the Court granted the motion to intercept wire communications on Adame-Regino's cell phone (Target phone #10). Investigative activity continued, and on April 25, 2013, the Court granted the Government's motion to extend the March 29 order for 30 days.

It is through these two wiretap orders that the Government intercepted phone calls between Adame-Regino and Defendant Jerman Aldava. Before March 29, the Government had not intercepted any phone calls in which Defendant was a participant. In fact, before March 29, this Defendant was unknown to and unidentified by agents in this investigation.

2

## II.     DISCUSSION

Defendant contends that the conversations intercepted from Target Phone 10 and derivative evidence should be suppressed because the Government did not establish sufficient necessity for the wiretaps. Once a judge authorizes a wiretap, it is presumed proper and the burden is on the defendant to prove its invalidity.[1]

All wiretap applications are subject to a necessity requirement which is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime."[2] Every wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."[3] Traditional investigative techniques include (1) standard surveillance; (2) questioning and interrogating witnesses or suspects, including through the use of grand jury proceedings; (3) search warrants; (4) infiltration of criminal groups by confidential informants and undercover agents; (5) pen registers; and (6) trap and trace devices.[4] But, the necessity requirement should not be interpreted as a mandate that law enforcement officials "exhaust all other conceivable investigative procedures before resorting to wiretapping."[5] Rather, the necessity requirement is in place "to ensure that in the usual case wiretapping is not used as the first meaningful step in an

---

[1] *United States v. Verdin-Garcia*, 516 F.3d 884, 890 (10th Cir. 2008) (citing *United States v. Radcliff*, 331 F.3d 1153, 1160 (10th Cir. 2003)).

[2] *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974).

[3] 18 U.S.C. § 2518(1)(c).

[4] *United States v. Cline*, 349 F.3d 1276, 1280 (10th Cir. 2003).

[5] *Id.*

investigation."[6]

A district judge may not approve a wiretap unless she finds that the applying officers have met this standard.[7] Defendant contends that the April 25, 2013 wiretap extension order, as well as the March 29 wiretap order fail to include such a full and complete statement about whether other investigative procedures were tried, and failed, or were not tried for justifiable reasons. The Court's thorough review of these two orders reveals that the affidavits in support of the applications for both wiretap orders contain the requisite full and complete discussion of the investigative methods used and not used. The 134-page affidavit in support of the March 29 order describes the course of the investigation before March 29. This affidavit discusses the various investigative methods used and whether they had been successful. The affidavit also generically discusses the relative strengths, weaknesses, and utility of a host of investigative methods generally available in the investigation of a wide-ranging drug organization, such as this one. The 69-page affidavit in support of the April 25 order similarly describes the use and utility, as well as the lack of use and utility, of various investigative methods, both generically and specifically in this investigation.

The affidavit in support of the March 29 order describes how the investigation began in 2012 with the use of a confidential informant, and continued with the use of confidential sources, as well as the utilization of an undercover officer. Despite the availability and use of these undercover individuals and the intelligence they provided, at the time of the March 29 order, as the affidavit states, there were still unknown and unidentified members of the conspiracy, sources

---

[6] *Id.*

[7] § 2518(3)(c).

of the drugs, and customers of the organization. Determination of the dimensions of a narcotics conspiracy and identification of the source of drugs are legitimate investigatory goals necessitating use of wiretaps. This was still the case on April 25, 2013, when the Government applied for the 30-day extension of the wiretap on Target Phone 10.

The affidavit in support of the March 29 order describes how the agents successfully used an undercover officer to infiltrate the organization to the degree that the undercover officer was able to purchase drugs from Adame-Regino on several occasions. Nevertheless, the officer was not able to gain intelligence that allowed identification of the sources of the drugs, other members of the organization, or customers. Nor were the undercover officer and other confidential sources able to identify stash house locations, or methods and means of money laundering, as the affidavit explains.

Other investigative methods, though deployed, had even less utility in identifying sources, locations of drugs, customers, other members of the organization, and location and disposition of assets of the organization. Both affidavits describe continual use of physical surveillance, which allowed for confirmation of meetings known to investigators through intercepted conversations or information from confidential sources. But physical surveillance did not and could not always result in identification of all involved in meetings, and did not and could not reveal the conversations and transactions that occurred behind closed doors outside the view and hearing of physical surveillance. Moreover, physical surveillance comes with the risk of exposure of the investigation. As the affidavits described, the targets of the investigation at times detected the presence of surveillance, which resulted in changes in their behavior, and canceled or postponed meetings or transactions, to the detriment of the ongoing investigation.

5

Even when augmented with GPS technology, physical surveillance suffered from limitations and risks, as the affidavits described. GPS technology could aid officers in determining the location of a vehicle, but could not inform them as to the conversations and transactions that occurred outside the view and hearing of physical surveillance. Moreover, as the affidavits explain, GPS devices have limited battery life, unless officers install them into the vehicle's electronic system. This is something officers are reluctant to do, given that many drug organizations install hidden compartments in vehicles and thus might very well detect a GPS device installed in the vehicle.

The affidavits discuss, both generically and specifically, other law enforcement techniques that were used but have limited utility, such as pen registers and traps and traces, that merely provide lists of telephone numbers on outgoing or incoming dialed calls. The affidavits discuss trash pulls, which were attempted, but unsuccessful in this investigation, because the targeted person did not put their trash out that day. Other targeted persons lived in multiple-tenant buildings, which would have made trash pulls of limited use unless officers could segregate one tenant's trash from another. The affidavits further discuss methods that were justifiably not even attempted, such as mail covers, because agents learned that this organization simply did not use the mail to transact any of their illicit business.

Defendant further contends that the affidavit in support of the April 25 wiretap extension order failed the necessity requirement because it failed to show any need for ongoing investigative activity. But that affidavit showed that the investigative activity between March 29 and April 25 was fruitful. For example, the March 29 application identified eleven persons as targets; while the April 25 application identified thirteen persons as targets. Indeed, Defendant

was not mentioned in the first affidavit, for he was unknown to officers at that time.  But through intercepted conversations of Target Phone 10, his existence became known before the Government applied on April 25 for a 30-day extension.  This illustrates that although there was a need and necessity for the wiretaps, the investigation was enjoying some success.  Just as earlier wiretaps and other investigative activity led to the identification of Adame-Regino and the phone he used (Target Phone 10), intercepted conversations on Target Phone 10 on the March 29 wiretap led to the identification of Defendant.

But while continued investigative activity was fruitful, the need for ongoing investigative activity was also apparent.  As the second affidavit explained, there were still unknown and unidentified conspirators, sources, locations and customers, and the means and methods of the drug organization as well as the location and disposition of assets remained unknown.  In short, the wiretap application on March 29, and the 30 day-extension application on April 25, met the necessity requirement by fully articulating their necessity in the lengthy and comprehensive affidavits in support.  Accordingly the motion to suppress is denied.

**IT IS THEREFORE ORDERED** that the Motion to Suppress (Doc. 19) is **DENIED.**

**IT IS SO ORDERED**.

Dated: December 19, 2013

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE